UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**DANIEL BRUCE CARPENTER** and
**MARY ESTHER CARPENTER**,

Debtors.

Case No. **13-61192-11**

## MEMORANDUM of DECISION

At Butte in said District this 3rd day of October, 2014.

In this Chapter 11 bankruptcy, after due notice, a hearing was held September 9, 2014, in Billings on the Debtor's July 10, 2014, Objection to Proof of Claim No. 5 filed by the Montana Department of Labor and Industry Unemployment Insurance Contributions Bureau. Harold V. Dye of Missoula, Montana appeared at the hearing on behalf of the Debtors and the Montana Department of Labor & Industry was represented at the hearing by Joseph Nevin of Helena, Montana. The Court heard attorney argument at the September 9, 2014, hearing. Daniel Carpenter testified and the Court granted the parties time to file post-hearing briefs. The parties have filed their briefs and the matter is ready for decision.

Debtors object to Proof of Claim No. 5 arguing the claim should be allowed as a general unsecured claim, rather than a priority claim. Proof of Claim No. 5 stems from unpaid

1

unemployment insurance taxes owed by Big Sky Fire Protection, Inc.,[1] which, pursuant to Mont. Code Ann. ("MCA") 39-51-1105,[2] makes Debtors, as officers of Big Sky Fire Protection, Inc. "liable for the taxes, penalties and interest due." Debtors contend that the amount owed is

---

[1] The total amount owed of $78,757.29 consists of unemployment taxes in the amount of $71,441.99 owed from the 4th quarter of 2011 through the 2nd quarter of 2013; interest of $9,838.62; and penalties of $125.00; less payments applied of $2,648.32.

[2] The complete text of MCA § 39-51-1105 reads as follows:

(1) The officer of a corporation whose responsibility it is to pay the taxes, penalties, and interest, as provided by 39-51-404, 39-51-1103(1) and (2), 39-51-1125(1), and 39-51-1301, is liable for the taxes, penalties, and interest due.

(2)(a) The department shall consider the officer of the corporation individually liable with the corporation for filing reports and unpaid taxes, penalties, and interest upon a determination that the corporate officer:

   (i) possessed the responsibility to file reports and pay taxes on behalf of the corporation; and

   (ii) possessed the responsibility on behalf of the corporation to direct the filing of reports or payment of other corporate obligations and exercised the responsibility that resulted in failure to file reports or pay taxes due.

(b) The department is not limited to considering the elements set forth in subsection (2)(a) to establish individual liability and may consider any other available information.

(3) The liability imposed upon an individual by this section remains unaffected by the bankruptcy of a business entity to which a discharge cannot be granted under 11 U.S.C. 727. The individual is liable for the unpaid amount of taxes, penalties, and interest.

(4) In the case of a limited liability company treated as a partnership pursuant to 39-51-207, the liability for unemployment insurance taxes, penalties, and interest owed extends jointly and severally to each member and to each manager, if any.

(5) In the case of a limited liability company that is not treated as a partnership pursuant to 39-51-207, liability for unemployment insurance taxes, penalties, and interest owed extends jointly and severally to the managers and members of the limited liability company.

2

an excise tax on employers and that Big Sky Fire Protection, Inc.,[3] and not the Debtors, was the employer. Debtors, citing the Ninth Circuit Bankruptcy Appellate Panel's ("BAP") decision in *In re Hansen*, 470 B.R. 535 (9th Cir. BAP 2012), argue that Debtors' liability under MCA § 39-51-1105 does not constitute a tax against the Debtors under 11 U.S.C. § 507(a)(8).

The Montana Department of Labor & Industry, Unemployment Insurance Division ("UID") counters that Debtors' reliance on *Hansen* is misplaced because the claim in *Hansen* was based solely on 11 U.S.C. § 507(a)(8)(C), which is distinguishable from the claim herein, which is based on § 507(a)(8)(E). Debtors and UID agree that the unemployment taxes in question are excise taxes. The sole issue is whether, under MCA § 39-51-1105, Debtors' personal liability for the excise taxes of Big Sky Fire Protection, Inc. is an excise tax on the Debtors. Citing *In re Rizzo*, 2012 WL 3201902, *4, 2012 Bankr. LEXIS 3713, 9-11 (Bankr. E.D. Mich 2012) ("Giving plain meaning to the words of § 523(a)(1)(A) or § 507(a)(8)(E) precludes finding demarcation between direct and vicarious liability. The SBT is undoubtedly an excise tax, and nothing is presented to show that the nature of the SBT debt changed as it passed from the Company to Plaintiff"); *In re Quiroz*, 450 B.R. 699, 702 (Bankr. E.D. Mich. 2011) (" Quiroz takes the position that the personal assessment of the SBT changes the nature of the tax. . . . There is no language requiring that the debt must have originally accrued to the debtor, only that the debtor be liable for the debt;" *In re McAdam*, 402 B.R. 473, 477-479 (Bankr. D.N.H. 2009); and *In re Mueller*, 243 B.R. 346, 349 (Bankr. D. Wis. 1999) (in

---

[3] Debtors represented in a motion filed March 14, 2014, at docket no. 74, that "Big Sky Fire Protection[, Inc.] cease[d] business in September 2013 and substantially all of its assets have been repossessed by secured creditors. It has no income; maintains no financial records and has filed a final tax return although it still exists as a shell."

addressing the plaintiff's claim under § 507(a)(8)(E), the bankruptcy court found it "immaterial that the return was due by IPBMC and not the Plaintiff individually"), UID urges the Court to reject Debtors' argument.

The Court agrees that the instant case is distinguishable from *Hansen*. Like the Debtors in this case, Hansen was an officer of certain corporate entities and was determined to be a responsible person for unpaid unemployment insurance taxes owed by the corporate entities to the California Employment Development Department. *Hansen*, 470 B.R. at 537. Hansen and others entered into an agreement for the payment of the unemployment insurance taxes, but defaulted on the payments required by that agreement. *Id.* at 538. Hansen then filed for bankruptcy protection and the California Employment Development Department sought a determination from the Bankruptcy Court that the unemployment insurance taxes were a tax of the kind specified in § 507(a)(8)(C) and that such taxes were excepted from Hansen's discharge under § 523(a)(1)(A). *Id.* at 539. The Bankruptcy Court ruled in favor of Hansen.

On appeal and referring to legislative history after finding § 507(a)(8)(C) ambiguous, the BAP affirmed the Bankruptcy Court, concluding that the unpaid California unemployment insurance taxes were not entitled to priority under § 507(a)(8)(C). *Hansen*, 470 B.R. at 543–44. The BAP explained:

> Based on the legislative history, we resolve § 507(a)(8)(C)'s ambiguity in favor of the Debtors. Doing otherwise would frustrate congressional intent. The legislative history shows that under § 507(a)(8)(C), a "tax required to be collected" must be collected from a third party. The UI Tax at issue here is not collected from a third party. Rather, as the EDD explained at oral argument, unemployment insurances taxes are payable directly by the employer; here, that was Onvoi. As such, it is not a "tax required to be collected" from anyone; Onvoi was responsible for its own debts. For this reason, we cannot conclude that the UI Tax is a tax of the kind specified in § 507(a)(8)(C). *See* 4 COLLIER, *supra,* ¶

4

>  507.11[4] (identifying five elements that must be present for a claim to achieve priority under § 507(a)(8)(C) and emphasizing the requirement that "the tax at issue must be owed by a party other than the debtor and then collected or withheld by the debtor from the other party"). *See also* 3 NORTON BANKRUPTCY LAW & PRACTICE 3d § 49.52 (2012).

*Id.* at 544-45. The BAP specifically noted in *Hansen* that "[a]s we have determined that the UI Tax at issue here is not a tax of the kind specified in § 507(a)(8)(C)—the only provision as to which the EDD seeks to qualify the UI Tax as a tax within the meaning of § 523(a)(1)(A)—we must find that it does not give rise to a nondischargeable debt." *Id.* at 545.

Unlike the California Employment Development Department in *Hansen*, UID in this case is claiming priority status under § 507(a)(8)(E). Section 507(a)(8)(E), unlike § 507(a)(8)(C), does not have a requirement that the tax at issue "be collected or withheld[.]" Rather, § 507(a)(8)(E) grants priority status to "an excise tax on ... a transaction" occurring within a three-year limitations period.

As explained in 4 COLLIER ON BANKRUPTCY ¶ 507.11[6] (Alan N. Resnick & Henry J. Sommer eds. 16th ed), "[t]he first step in determining whether a claim is entitled to priority is determining whether the claim asserted by a governmental entity is a tax or is another type of obligation. This is the most frequently litigated issue under section 507(a)(8)(E)." In determining whether a license fee or franchise tax constituted a "tax" for purposes of the Bankruptcy Code, the Court in *New Jersey v. Anderson*, 203 U.S. 483, 492, 27 S.Ct. 137, 51 L.Ed. 284 (1906), wrote:

> Generally speaking, a tax is a pecuniary burden laid upon individuals or property for the purpose of supporting the government. We think this exaction is of that character. It is required to be paid by the corporation after organization *in invitum*. The amount is fixed by the statute, to be paid on the outstanding capital stock of the corporation each year, and capable of being enforced by action against the will

5

of the taxpayer. As was said by Mr. Justice Field, speaking for the court in *Meriwether v. Garrett*, 102 U. S. 472, 513:

> 'Taxes are not debts. It was so held by this court in the case of *Lane County v. Oregon*, 7 Wall, 71, 19 L. ed. 101. Debts are obligations for the payment of money founded upon contract, express or implied. Taxes are imposts levied for the support of the government, or for some special purpose authorized by it. The consent of the taxpayer is not necessary to their enforcement. They operate *in invitum*. Nor is their nature affected by the fact that in some states--and we believe in Tennessee--an action of debt may be instituted for their recovery. The form of procedure cannot change their character.'

*See also New York v. Feiring*, 313 U.S. at 285 (The Court determined that a city-imposed sales tax constituted a "tax" under the Bankruptcy Act as "the priority commanded by [the Bankruptcy Act] extends to those pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it.").

Years later, in *Cnty. Sanitation Dist. No. 2 of Los Angeles Cnty. v. Lorber Indus. of Cal., Inc. (In Lorber Indus. of Cal., Inc.)*, 675 F.2d 1062, 1066 (9th Cir. 1982), the Ninth Circuit Court of Appeals fashioned a four-pronged,[4] but often criticized,[5] analysis for determining

---

[4] A fifth element was added to the *Lorber* test: a claim cannot be considered an excise tax if a private creditor can assert a claim similar to the governmental entity. *George v. Uninsured Emp'r Fund (In re George)*, 361 F.3d 1157, 1162-63(9th Cir. 2004). This element is not relevant in the context of this contested matter. The parties have agreed that a portion of the claim amount is an excise tax.

[5] In *Workers' Comp. Trust Fund v. Saunders*, 234 B.R. 555, 563 (D. Mass. 1999), the Court wrote: "As the foregoing collection of cases demonstrates, application of the *Lorber* test in the area of workers' compensation reimbursement claims can produce strong arguments both for and against the classification of such claims as excise taxes. This court is hardly the first to note this problem with the *Lorber* test." *See also, In re Suburban Motor Freight, Inc.*, 998 F.2d 338, 340-41 (6th Cir. 1993). This Court is perplexed by the criticism of the *Lorber* analysis as it is basically a restatement of the test articulated by the Supreme Court in *Anderson, supra*, namely

6

whether an obligation is a tax:

> (T)he elements which characterize an exaction of a "tax" within the meaning of said Section 64, sub. a(4) are as follows:
>
>> (a) An involuntary pecuniary burden, regardless of name, laid upon individuals or property;
>> (b) Imposed by, or under authority of the legislature;
>> (c) For public purposes, including the purposes of defraying expenses of government or undertakings authorized by it;
>> (d) Under the police or taxing power of the state.

Utilizing the foregoing analysis, the Court in *Lorber* determined that a debtor's voluntary discharge of unusually high quantities of wastewater into a sewer system operated by the county sanitation district was a non-tax fee because the assessment or imposition of fees was more akin to a contractual obligation that resulted from the debtor's "decisions to acquire a permit and to engage in a high level of system use." *Lorber*, at 1067. The Ninth Circuit again emphasized in *Industrial Comm'n of Arizona v. Camilli (In re Camilli)*, 94 F.3d 1330, 1333 (9th Cir. 1996), that the obligation in *Lorber* "was not created by the statute authorizing imposition of the fees. *Id.* at 1067. Rather, the obligation was created by the debtor's voluntary act of using the system. *See id.* at 1067, n.4."

In *Camilli*, the debtor was statutorily obligated to reimburse the Industrial Commission of Arizona ("ICA") for amounts the ICA paid to one of the uninsured debtor's injured employees. Utilizing the *Lorber* analysis, the Court in *Camilli* held that the obligation was a nondischargeable excise tax. The Court in *Camilli* discussed with approval two decisions

---

that: "a tax is a pecuniary burden laid upon individuals or property (1st *Lorber* prong) for the purpose of supporting the government (3rd *Lorber* prong) . . . [which] amount is fixed by . . . statute (2nd *Lorber* prong) . . . and [is] capable of being enforced against the will of the taxpayer (4th *Lorber* prong)."

7

rendered by the Sixth Circuit Court of Appeals, *In re Suburban Motor Freight, Inc*., 36 F.3d 484 (6th Cir. 1994) (*Suburban II*) and *In re Suburban Motor Freight, Inc.*, 998 F.2d 338 (6th Cir. 1993) (*Suburban I*):

> In *Suburban I*, the Sixth Circuit considered the obligation of the debtor to pay premiums to the Ohio Bureau of Workers' Compensation. Under the Ohio workers' compensation scheme, unlike the Arizona workers' compensation scheme, all employers were required to pay premiums to the State Bureau of Workers' Compensation, and private insurance companies were not permitted to offer workers' compensation insurance. Central to the court's holding that the premium obligation was a "tax" was the fact that employers could have no similar obligations to a private carrier. Taking the view that the "public purpose" element enunciated in *Lorber,* standing alone, reached too broadly, the court refined *Lorber's* "public purpose" criterion to require (1) that the pecuniary obligation be universally applicable to similarly situated entities; and (2) that according priority treatment to a government claim not disadvantage private creditors with like claims. *See Suburban I*, 998 F.2d at 342. Because the premium obligation to the state was, in Ohio, a universal obligation for all employers except self-insurers, and because according priority treatment to those claims did not disadvantage any private creditors with similar claims, *Suburban I* held that the premium obligations were a tax.
>
> In *Suburban II,* however, the same court was faced with the Bureau's claim, not for premiums, but for reimbursement of payments made to workers' compensation claimants. The payments had been necessitated by Suburban's failure to pay premiums when it was a participant in the state insurance fund, and its failure to pay claims which arose when it was a self-insured employer. The Sixth Circuit decided that such claims for reimbursement did not qualify as a "tax" within the meaning of the Bankruptcy Code.
>
> *Suburban II* dealt first with the state's claim for reimbursement of compensation payments it made when the debtor was a fund participant but had defaulted on its premium obligations. The court reasoned that, once it had held in *Suburban I* that the premium obligations themselves were entitled to priority as a tax, the court would not accord priority to the Bureau's claim for reimbursement as well. The Sixth Circuit concluded that allowing priority in bankruptcy for both premiums and claims payments would overcompensate the state without benefitting the general public.
>
> *Suburban II* also dealt with claims for reimbursement brought about by Suburban's default on obligations to employees during the period when it was a

declared self-insurer under the Ohio law. Again, relying on the specific provisions of Ohio law, the court noted that Ohio law required self-insurers to post a bond, and that sureties had contributed, along with the state's surplus fund, to compensate Suburban's injured employees when Suburban defaulted. To allow priority status to the state fund, the court concluded, would be unfair to private sureties.

The ICA's claims in this case are materially different from the Bureau's in *Suburban II.* First, the Arizona's workers' compensation scheme is not a state monopoly, so that premium obligations to the state would not be accorded tax priority as a universal obligation of all insured employers. Second, the ICA's Special Fund differs from Ohio's in that the ICA carries its statutorily- imposed burden alone. No private entity competes with the ICA to pay "insurance" claims for which no insurance has been bought. Thus, there are no private creditors with claims similar to the ICA's in bankruptcy proceedings.

Accordingly, the Sixth Circuit's decisions in *Suburban I* and *Suburban II* are fully consistent with our holding that the exclusive and universal obligation under Arizona law of the Special Fund to provide compensation to employees of uninsured employers is a "tax" entitled to priority under the Bankruptcy Code. Because the obligation in this case meets the four additional requirements set forth by the Sixth Circuit in *Suburban I*, as well as the criteria of *Lorber*, there is no need to decide whether the *Suburban I* requirements must be met in all cases.

The above discussion makes it apparent that the Ninth Circuit Court of Appeals considers it appropriate, in certain instances, to expand the *Lorber* elements to include the two additional requirements that the pecuniary obligation be universally applicable to similarly situated entities and that according priority treatment to a government claim not disadvantage private creditors with like claims. Adoption of the two additional Sixth Circuit requirements remedies the concern articulated by the *Suburban I* Court:

Some courts, however, have allowed a rather problematic criterion to sneak into their analyses; namely, that the defining feature of a tax is its "public purpose."

\* \* \*

The second and fourth "prongs" of the *Lorber* test describe virtually every

9

> government program; the first prong raises only the question of involuntariness, which in this case is largely conceded. What is left is the single question of whether money demanded by the Government is to be put toward "public purposes," including "defraying the expenses of government." Needless to say, all money collected by the Government goes toward defraying its expenses, and is used for public purposes. The threat of the *Lorber* reasoning, then, is that the Government automatically wins priority for all money any debtor owes it, regardless of the nature of the payments.

*Suburban I*, 998 F.2d at 340-41.

In the case *sub judice*, the Court need not engage in the above analysis because as noted earlier, Debtors concede in their objection, docket no. 116, p.2, and in their Reply Brief, docket no. 137, p.2, that the unemployment taxes at issue in this case are excise taxes. Moreover, the Court concludes, as the court did in *In re Quiroz*, 450 B.R. at 702, that "[t]here is no language [in § 507(a)(8)(E)] requiring that the debt must have originally accrued to the debtor, only that the debtor be liable for the debt."

Debtors agree that they are or were corporate officers of Big Sky Fire Protection, Inc. who, under MCA § 39-51-1105(1), are liable for the taxes, penalties and interest due by Big Sky Fire Protection, Inc. for unpaid unemployment taxes. Moreover, based upon the testimony of Daniel Carpenter, Debtors are, under MCA § 39-51-1105(2), individually liable with Big Sky Fire Protection, Inc. because they "(i) possessed the responsibility to file reports and pay taxes on behalf of the corporation; and (ii) possessed the responsibility on behalf of the corporation to direct the filing of reports or payment of other corporate obligations and exercised the responsibility that resulted in failure to file reports or pay taxes due." Consequently, with the exception of $125.00, the unemployment taxes set forth in Proof of Claim No. 5 are entitled to priority treatment.

The unemployment taxes are an involuntary pecuniary burden imposed by this State's legislature for the public purpose set forth in MCA §§ 39-51-101, *et. seq*. Moreover, the obligation at issue meets the two additional elements articulated by the *Suburban I* Court as discussed with approval by the Court in *Camilli*, in that the particular assessment is universally applicable to similarly situated officers in that all officers who are responsible for paying the taxes, interest and penalties of corporations are liable for such taxes, interest and penalties. Additionally, the unemployment insurance fund is administered exclusively by the State of Montana's department of labor and industry and thus, there can be no private creditors with claims similar to the instant claim of the UID.

As to the $125.00 referenced above, UID's claim identifies $125.00 of the amount owed as a penalty. In distinguishing a penalty from a tax, the Court in *Anderson* wrote:

> [A] penalty, as the word is here used, is an exaction imposed by statute as punishment for an unlawful act." *United States v. La Franca*, 282 U.S. 568, 572, 51 S.Ct. 278, 280, 75 L.Ed. 551 (1931).
>
> We take *La Franca's* statement of the distinction to be sufficient for the decision of this case; if the concept of penalty means anything, it means punishment for an unlawful act or omission, and a punishment for an unlawful omission is what this exaction is.

The penalty in this case, as permitted under MCA § 39-51-1301(2), is clearly penal in nature, and is thus not allowed as a tax.

In accordance with the foregoing, the Court will enter a separate order providing as follows:

IT IS ORDERED that Debtors' Objection to Proof of Claim No. 5 filed by the Montana Department of Labor and Industry Unemployment Insurance Contributions Bureau is sustained

in part and overruled in part; and Proof of Claim No. 5 filed by the Montana Department of Labor and Industry Unemployment Insurance Contributions Bureau shall be allowed as a priority claim in the amount of $78,632.29 and an unsecured nonpriority claim in the amount of $125.00.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana