## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**DANIEL BRUCE CARPENTER** and
**MARY ESTHER CARPENTER**,

Debtors.

Case No. **13-61192-11**

## MEMORANDUM of DECISION

At Butte in said District this 15th day of September, 2016.

In this Chapter 11 bankruptcy case, after due notice, the Court held a hearing in Billings on July 19, 2016, on Debtors' Objection to Proof of Claim No. 4 filed by the Internal Revenue Service ("IRS"). Debtors were represented at the hearing by Harold V. Dye of Missoula, Montana, and the IRS was represented at the hearing by Ryan S. Watson of Washington, DC and Assistant U.S. Attorney Victoria L. Francis of Billings, Montana. Debtor Daniel Carpenter and IRS Revenue Agent Jerry Webb testified. Debtors' Exhibits 1, 2, 4-10 and the IRS's Exhibits A, B, D, E and F were admitted into evidence.

### BACKGROUND

In 2006, Debtors purchased an existing fire suppression business and the real property associated with the business. At that time, Debtors separated the real property from the business operations so that Gavriel, LLC owned the real property and the business operations were conducted by Big Sky Fire Protection, Inc. Gavriel, LLC and Big Sky Fire Protection were both wholly owned by Debtors.

1

Big Sky Fire Protection occupied approximately one-half of the real estate owned by Gavriel, LLC, with the other half of the real estate occupied by other tenants. Roughly eighty percent of Big Sky Fire Protection's business stemmed from new construction. Big Sky Fire Protection's business suffered substantially in the 2008 recession and after.

For the fiscal year ending September 30, 2010, Big Sky Fire Protection's assets were valued at $966,367 (of which $523 was in cash), and its liabilities totaled $1,310,248. For the fiscal year ending September 30, 2011, Big Sky Fire Protection reported gross receipts of $3,427,573, negative taxable income of $531,758, assets valued at $1,092,040 (of which $989 was in cash), and liabilities totaling $1,664,861. For the fiscal year ending September 30, 2012, Big Sky Fire Protection reported gross receipts of $2,676,042, negative taxable income of $609,963, assets valued at $866,913 (of which $0 was in cash) and liabilities totaling $1,958,609. For the fiscal year ending September 30, 2013, Big Sky Fire Protection reported gross receipts of $1,984,416, negative taxable income of $606,140, assets valued at $731,187 (of which $0 was cash), and liabilities totaling $2,432,128. For the fiscal year ending September 30, 2014, Big Sky Fire Protection filed a final U.S. Corporation Income Tax Return, reporting no gross receipts, taxable income or assets as of September 30, 2014.

Debtor Daniel Carpenter testified that a line of credit from First Interstate Bank was essential for Big Sky Fire Protection's operations. First Interstate Bank closed Big Sky Fire Protection's line of credit in 2012. To compensate for the loss of the line of credit, Debtors, on or about September 20, 2012, caused Gavriel, LLC to sell its real property for $1,350,000. Proceeds from the sale were used to pay closing costs and to pay debts of Big Sky Fire Protection, including $560,000 owed to First Interstate Bank on the line of credit. Debtor Daniel

Carpenter testified that he was not thinking clearly in 2012 and that in hindsight, the sale was a foolish move. Debtors continued to operate Big Sky Fire Protection until they filed bankruptcy in August of 2013. Sometime after September 30, 2013, First Interstate Bank seized and liquidated Big Sky Fire Protection's assets.

     Debtors filed their bankruptcy case on August 30, 2013. The IRS filed its original Proof of Claim on September 12, 2013, asserting an estimated claim of $49,647.68 because Debtors had not yet filed their 2012 income tax return. Around this same time, Debtors filed their 2012 U.S. Individual Income Tax Return, reporting the long-term capital gain of $707,992 from Gavriel's September 2012, sale of its real property. Debtors did not, at this time, claim that their stock in Big Sky Fire Protection was worthless. The IRS amended its Proof of Claim several times thereafter, with the IRS filing its last amendment on May 2, 2014, asserting a priority claim in the amount of $1,069,780.52, consisting of various civil penalties and a 2012 income tax liability of $163,235, together with additional non-priority penalties of $4,158.87.

     After the IRS filed its amended Proof of Claim on May 2, 2014, Debtors amended their 2012 U.S. Individual Income Tax Return seeking to offset the gain of $707,992 from the sale of Gavriel's real property with a write off of $1,128,842 representing the value of Debtors' stock in Big Sky Fire Protection. In Part III of the Amended Return, Debtors explain that the change is the result of Debtors: "RECOGNIZING A LOSS ON C CORPORATION STOCK FOR ENTITY THAT WAS DEEMED INSOLVENT AT PERIOD END. AS SUCH, THE SHAREHOLDERS' STOCKS WERE DEEMED WORTHLESS AT 12/31/2012." Although the board of directors had not, as of December 31, 2012, voted to wind up Big Sky Fire Protection's affairs, Debtor Daniel Carpenter testified that in his opinion, Big Sky Fire Protection's stock was

worthless as of December 31, 2012, even though Big Sky Fire Protection continued to do business and had not liquidated its assets. The amendment reduced Debtors' 2012 tax liability from $163,964 to approximately $35,000.

In a determination letter dated December 1, 2015, the IRS informed Debtors that they had provided inadequate information to justify the amendment. Consistent with the determination letter, the Examining Officer's Activity Record, Exhibit B, reflects under July 30, 2015, "Remarks, Notes, Actions Taken" that: "The taxpayer corporation was in full operation into 2013 with assets and infusions of cash from asset sales, indicating the taxpayer corporate stocks were not worthless as claimed. The taxpayers were claiming personal bankruptcy and the corporation was not. The taxpayers also had assets to satisfy a portion of the bankruptcy debt. The claim for abatement was to be disallowed in full."

Debtors, still seeking to offset the gain from the sale of Gavriel's real property with a worthless stock deduction, filed an Objection to the IRS's proof of claim on December 22, 2015, requesting that the income tax component of Proof of Claim No. 4 be allowed in the sum of $34,271 rather than $163,235. In support of their Objection, Debtors argue:

> d) Acting on advice of tax counsel, Debtors filed amended tax returns for 2012 on the theory that their stock in Big Sky was worthless at the end of 2012 and that they were entitled to offset their capital loss from Big Sky against their capital gain from Gravel [sic]. This resulted in reducing their 2012 federal income tax liability to $34,271.
>
> e) The Montana Department of Revenue accepted the amended return as filed and filed an amended proof of claim in this matter reducing income tax liability for 2012. The IRS did not accept the amended return stating that "the information that you provided doesn't justify changing our prior adjustment."
>
> f) In fact, substantial, if not overwhelming, evidence supports the conclusion that Big Sky stock was worthless at the end of 2012 meaning (a)

4

balance sheet insolvency and (b) a complete lack of future value including the following:

- At the end of the fiscal year ended 9/30/12, Big Sky had current liabilities of $1,554,908 compared with current assets of $450.221. The company's net worth was negative $1,151,196.

- The net loss for year ended 9/30/12 was $518,875; the loss for the prior year was $531,758.

- As of 9/30/12, Big Sky had unpaid payroll taxes of over $500,000.

- As of the end of 2012, the taxpayers' line of credit was exhausted and there was no realistic possibility of obtaining additional credit.

- Operations during the final quarter of 2012 showed a loss consistent with the past two years' losses.

## APPLICABLE LAW and DISCUSSION

"A proof of claim executed and filed in accordance with [the Federal Rules of Bankruptcy Procedure] shall constitute *prima facie* evidence of the validity and amount of the claim." FED.R.BANKR.P. 3001(f). This evidentiary presumption is a rebuttable one. *Litton Loan Servicing, LP v. Garvida (In re Garvida)*, 347 B.R. 697, 706 (9th Cir. BAP 2006); *In re Eiesland*, 19 Mont. B.R. 194, 208–09 (Bankr. D. Mont. 2001). "The mechanics of what it takes to rebut the Rule 3001(f) presumption are driven by the nature of the presumption as '*prima facie*' evidence of the claim's validity and amount." *Id*. at 706-07. Thus, a properly executed proof of claim constitutes *prima facie* evidence, and "[o]ne rebuts evidence with counter-evidence." *Id*.

The record in the case *sub judice* shows that the IRS executed and filed its proof of claim in accordance with the Federal Rules of Bankruptcy Procedure. Thus, its proof of claim provided *prima facie* evidence as to the validity and amount of its claim. The burden then shifted to the Debtors to supply sufficient evidence "tending to defeat the claim by probative force equal to that

5

of the allegations of the proofs of claim themselves." *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000) (quoting *In re Holm*, 931 F.2d 620, 623 (9th Cir.1991)). For the reasons discussed below, Debtors have not produced sufficient evidence to cause the burden to revert to the IRS to prove the validity and amount of its claim.

The tax court set forth a test for determining whether stock is worthless:

> The ultimate value of stock, and conversely its worthlessness, will depend not only on its current liquidating value, but also on what value it may acquire in the future through foreseeable operations of the corporation. Both factors of value must be wiped out before we can definitely fix the loss. If the assets of the corporation exceed its liabilities, the stock has liquidating value. If its assets are less than its liabilities but there is a reasonable hope and expectation that the assets will exceed the liabilities of the corporation in the future, its stock, while having no liquidating value, has potential value and can not be said to be worthless. The loss of potential value, if that exists, can be established ordinarily with satisfaction only by some "identifiable event" in the corporation's life which puts an end to such hope and expectation.

*Morton v. Comm'r*, 38 B.T.A. 1270, 1278–1279 (1938), *aff'd* 112 F.2d 320 (7th Cir.1940). The Ninth Circuit more recently echoed this test:

> Securities may not be considered worthless, even when they have no liquidating value, if there is a reasonable hope and expectation that they will become valuable in the future. *Lawson v. Commissioner*, 42 B.T.A. 1103, 1108, 1940 WL 144 (1940). But, "such hope and expectation may be foreclosed by the happening of certain events such as the bankruptcy, cessation from doing business, or liquidation of the corporation, or the appointment of a receiver...." *Morton v. Commissioner*, 38 B.T.A. 1270, 1278, 1938 WL 165 (1938), *aff'd*, 112 F.2d 320 (7th Cir.1940). To establish worthlessness, the taxpayer "must show a relevant identifiable event . . . which clearly evidences destruction of both the potential and liquidating values of the stock." *Austin Co. v. Commissioner*, 71 T.C. 955, 970, 1979 WL 3593 (1979). The burden of establishing worthlessness is on the taxpayer. *Figgie Int'l Inc. v. Commissioner*, 807 F.2d 59, 62 (6th Cir. 1986).

*Delk v. C.I.R.*, 113 F.3d 984, 986 (9th Cir. 1997). *See also Textron, Inc*. v. U.S., 418 F.Supp. 39, 44-47 (D. RI 1976) (requiring that the stock be wholly worthless and that the "deduction for a

worthless security be claimed for the year in which said security becomes worthless without the benefit of hindsight").

Debtors' argument in support of their objection to the IRS's proof of claim is two-fold. First, Debtors contend that Big Sky Fire Protection had no cash or liquidation value at the end of 2012. Based upon the record in this case, such argument, in and of itself, is not persuasive because Big Sky Fire Protection never had much cash on hand; ranging from zero to a high of $989 as of September 20, 2011.[1] In addition, Big Sky Fire Protection's liabilities exceeded its assets not only in 2012 (by $1,091,696), but also as of September 30, 2010 (by $343,881), as of September 30, 2011 (by $572,821) and as of September 30, 2013 (by $1,700,941). Big Sky Fire Protection was clearly on a downward spiral throughout 2010, 2011, 2012 and 2013. Debtors decision to writeoff their Big Sky Fire Protection stock in 2012, without some other "identifiable event," was simply arbitrary because Debtors could or should have written off the value of their Big Sky Fire Protection stock as early as 2010, which they did not do.

Debtors second argument is that they had two identifiable events in 2012 that justified writing off the value of their Big Sky Fire Protection Stock: First Interstate Bank's termination of Big Sky Fire Protection's line of credit; and the sale of Gavriel's building, which Debtors maintain was their last remaining source of capital. Contrary to Debtor Daniel Carpenter's testimony that First Interstate Bank's line of credit was essential for Big Sky Fire Protection's operations, Big Sky Fire Protection continued its operations without the line of credit as evidenced by the fact that Big Sky Fire Protection continued to generate gross revenues without

---

[1] Big Sky Fire Protection's change in cash is minuscule when one considers that Big Sky Fire Protection's gross receipts ranged from $3,427,573 in 2011, to $1,984,416 in 2013.

the line of credit, including gross receipts of $1,984,416 during the first eight months of 2013. Additionally, while Gavriel's real estate may have been a source of capital for Debtors, it was not an asset of Big Sky Fire Protection and Debtors have failed to show how its sale specifically impacted Big Sky Fire Protection; Big Sky Fire Protection's debt to First Interstate Bank was paid off and was arguably replaced with a debt owed to the Debtors or Gavriel, resulting in an accounting wash for Big Sky Fire Protection.

Debtor Daniel Carpenter testified that Big Sky Fire Protection's business was drastically and negatively impacted by the real estate collapse of 2008 and that Big Sky Fire Protection incurred operating losses each year thereafter. Other than uninterrupted and ruinous operating losses between 2008 and August of 2013, Debtors failed to show any identifiable event that caused the unequivocal termination of Big Sky Fire Protection's stock value in 2012. Rather, the evidence shows that neither Debtors nor their accountant were contemplating that Big Sky Fire Protection's stock was worthless at anytime in 2012 or as of late 2013, when Debtors filed their 2012 income tax return. In fact, Debtors were infusing cash into Big Sky Fire Protection in September of 2012, which indicates that Debtors believed that Big Sky Fire Protection had potential value at that time. It was not until sometime after Debtors filed their bankruptcy petition that Debtors' counsel concluded that Debtors could save a substantial sum of money by offsetting the gain from the sale of Gavriel's building with a worthless stock writeoff. Unfortunately for Debtors, the evidence shows that Big Sky Fire Protection's stock became worthless not in 2012, but in 2013 when Debtors ceased operating Big Sky Fire Protection and when First Interstate Bank seized its collateral.

For the reasons discussed above, the Court will enter a separate order providing as

follows:

IT IS ORDERED that Debtors' Objection to Proof of Claim No. 4 filed by the Internal Revenue Service is OVERRULED.

*Ralph B Kirscher*
Honorable Ralph B. Kirscher
Chief U.S. Bankruptcy Judge